# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 19-1157V
UNPUBLISHED

| | |
|---|---|
| ELIZABETH GRUBA,<br><br>　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: April 13, 2021<br><br>Special Processing Unit (SPU);<br>Decision Awarding Damages; Pain<br>and Suffering; Influenza (Flu)<br>Vaccine; Guillain-Barré Syndrome<br>(GBS) |

*Renee Ja Gentry*, The Law Office of Renee J. Gentry, Washington, DC, for Petitioner.

*Terrence Kevin Mangan, Jr.*, U.S. Department of Justice, Washington, DC, for Respondent.

**DECISION AWARDING DAMAGES**[1]

On August 9, 2019, Elizabeth Gruba filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered Guillain Barré syndrome ("GBS") as a result of receiving the influenza ("flu") vaccination on October 16, 2018. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters, and although Respondent conceded entitlement, the parties could not informally resolve damages.

For the reasons set forth below, and after hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount **$175,169.13**, representing **$165,000.00** for actual pain and suffering, **$500 per year** for future pain and suffering

---

[1] Because this unpublished Decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

reduced to its net present value of **$6,365.77**, **$3,554.51** for past lost wages, and **$248.85** in past unreimbursable expenses.

## I.  Relevant Procedural History

Approximately nine months after this case was initiated, Respondent filed a Rule 4(c) Report conceding that Petitioner was entitled to compensation. ECF No. 26. A ruling on entitlement was issued on the same day. ECF No. 19. The parties thereafter attempted to informally resolve damages but were unsuccessful. ECF No. 30. I issued a scheduling order on September 22, 2020 (ECF No. 31), regarding the briefing of disputed damages issues, and the parties filed their respective briefs on October 22, 2020. ECF No. 33, Respondent's Brief on Damages ("Res. Br."); ECF No. 34, Petitioner's Memorandum in Support of Petitioner's Motion for Finding of Fact and Conclusions of Law Regarding Damages ("Pet. Br."). I proposed that the parties be given the opportunity to argue their positions at a Motions Day hearing, at which time I would decide the disputed damages issues. ECF. No. 36. That hearing was held on March 26, 2021,[3] and the disputed matter is now ripe for a determination.

## II.  Relevant Medical History

Petitioner was 69 years old when she received a flu vaccine on October 16, 2018. Ex. 1 at 1; Ex. 30 at 1. She saw David Katz, M.D., an orthopedist, on November 12, 2018, for left elbow pain after a fall two days earlier, but did not at this time complain of GBS-like symptoms.[4] An x-ray showed a non-displaced radial head fracture. Ex. 12 at 7-8. She returned on November 26, 2018, and reported that she was doing well overall, but still had some soreness in her wrist. *Id.* at 5-6.

Mrs. Gruba next presented to Urgent Care on December 1, 2018, complaining of weakness and numbness in her feet for the past week. Ex. 3 at 30.[5] She was admitted to the hospital that day. She was initially assessed with acute renal injury, paresthesia, and elevated blood pressure. *Id.* at 39. On December 3, 2018, Petitioner had a neurology consult and reported difficulty walking with weakness, loss of strength in various muscle groups, and diminished to absent deep tendon reflexes. *Id.* at 47. A lumbar puncture

---

[3] At the end of the hearing held on December 11, 2020, I issued an oral ruling from the bench on damages in this case. That ruling is set forth fully in the transcript from the hearing, which is yet to be filed with the case's docket. The transcript from the hearing is, however, fully incorporated into this Decision.

[4] Petitioner's affidavit, however, claims she fell on November 8, 2018, due to her fatigue and/or lack of balance. Ex. 26 at 1-2.

[5] Petitioner's affidavit asserts she began feeling fatigue and had difficulty walking as early as two weeks after her flu vaccine. Ex. 26 at 1-2.

showed mildly elevated protein in her cerebral spinal fluid. *Id.* at 50. The assessment was that Petitioner "clinically has Guillain-Barre syndrome until proven otherwise." *Id.*

Petitioner, at the request of her family, was subsequently transferred to Piedmont Athens Hospital on December 3, 2018, where she underwent a three-day course of IVIG. Ex. 3 at 33; Ex. 5 at 6. She was next transferred to an inpatient rehabilitation center on December 10, 2018, where she stayed for an additional nine days. Ex. 6 at 17. At the time of her discharge, Petitioner required some assistance walking due to an ataxic gate pattern. *Id.* at 17.

Petitioner attended 17 physical therapy sessions between December 26, 2018 and February 7, 2019. Ex. 8. On January 21, 2018, her neurologist, Dr. Brian Mitchell, evaluated her and reported her balance was still off. However, but for a slight reduction in her bilateral knee flexion her strength was normal. Ex. 7 at 59. Petitioner saw Dr. Mitchell again six months later, on July 22, 2019. Ex. 27 at 2. Petitioner reported some continued left-sided weakness and reduced strength in her extremities. Ex. 27 at 2-5. However, her GBS was characterize as stable, and upon examination her strength and sensation were normal, but her reflexes were absent. *Id.* at 5.

On May 20, 2020, Petitioner saw Dr. Mitchell for a follow-up. Ex. 32 at 2-6. At that time she reported some numbness in her heels in the morning and mild balance issues. However, her strength, sensation, and gait were normal. She also reported some memory problems that were not evaluated. Dr. Mitchell's impression was that she had recovered well but had some mild/lingering residual numbness. *Id.*

Petitioner returned to physical therapy for a further evaluation on July 27, 2020 "because my lawyer wanted me to be reevaluated to determine if I am any worse than when I got done with therapy last time. I don't feel like too much has changed since I last saw the therapist back in 2018." Ex. 34 at 2. The impression was that Petitioner had "mostly improved objective findings since discharge on 02/07/2019" but self-reported a decrease in functional status. *Id.* at 3. No further care was needed at that time.

Petitioner also submitted affidavits from herself, her husband, and a close friend, describing the course of her illness and treatment. Exs. 26, 31, 35, 36. The affidavits indicate Mrs. Gruba continues to experience some sequalae of her GBS, including some numbness, trouble sleeping, memory problems, and reduced cognitive skills. They also note that Petitioner had to quit her job at a day care facility because she can no longer receive flu vaccinations.

### III.     Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Special masters may consider prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in a specific case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may also rely on my own experience adjudicating similar claims.[6] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering

---

[6] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases were assigned to former Chief Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

4

is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

## IV. Appropriate Compensation in this Matter

### A. Pain and Suffering

In this case, awareness of the injury is not disputed. Mrs. Gruba was a competent adult with no impairments that would impact her awareness of her injury. Therefore, I analyze principally the severity and duration of petitioner's injury.

Mrs. Gruba's medical records and affidavit provide a credible description of the pain she experienced throughout the duration of her injury. Pet. Br. at 5-9. Petitioner argues that her GBS resulted in numbness and weakness beginning in late October, 2018, causing her to fall and break her elbow. Further, her assessment and GBS treatment involved numerous tests, including an EMG and lumbar puncture, hospital admittance of eighteen days, seventeen outpatient physical therapy sessions, and residual symptoms she continues to report. *Id.* at 10-12. Petitioner cites to a number of damages decisions involving GBS injuries and highlights the similarities between the petitioners in those cases and GBS. *Id*. at 9-10.[7] Petitioner argues that an award of $180,000.00 for past pain and suffering, and $1,000.00 per year for future pain and suffering, is appropriate in this case. *Id*. at 12.

Respondent, on the other hand, argues Mrs. Gruba suffered a more mild course of GBS than other cases, including an onset six weeks after her vaccination, a ten-day hospital stay that included three days of IVIG, nine days at an in-patient rehabilitation facility, and seventeen physical therapy sessions. Further, Petitioner did not require significant assistance walking, had no respiratory distress, did not require neuropathic pain medications, and was largely recovered within one year of her diagnosis. Res. Br. at 6. As a result, Respondent proposes an award of only $102,500.00. Res. Br. 7.

After reviewing the record in this case and considering the parties' arguments, I find that the record best supports the conclusion that Petitioner's condition, while serious, was a more moderately severe case of GBS. Based on the medical records, onset of

---

[7] In particular, Petitioner cited to W.*B. v. Sec'y of Health & Hum. Servs.*, No. 18-1634V, 2020 WL 5509686, at *4 (Fed. Cl. Aug. 7, 2020) (awarding $155,000 for pain and suffering in a generally mild GBS case); *Devlin v. Sec'y of HHS*, No. 19-191V, 2020 WL 5512502 (Fed. Cl. Spec. Mstr. Aug 7, 2020) (awarding $180,000 for pain and suffering); *Johnson v. Sec'y of HHS*, No. 16-135V, 2018 WL 5024012 (Fed. Cl. Spec. Mstr. July 20, 2018) (awarding $180,000.00 for pain and suffering); *Dillenbeck v. Sec'y of HHS*, 17-428V, 2019 WL 4072069 (Fed. Cl. Spec. Mstr. July 29, 2019) (awarding $180,857.15 for pain and suffering); *Fedewa v. Sec'y of HHS*, No. 17-1808V, 2020 WL 1915138 (Fed. Cl. Spec. Mstr. March 26, 2020) (awarding $180,000 for pain and suffering).

5

Petitioner's GBS occurred approximately six weeks after her flu vaccination.[8] Petitioner's treatment included a 10-day hospital stay with a 3-day course of IVIG. She then had a 9-day stay an inpatient rehabilitation facility and 17 physical therapy sessions. Petitioner's therapy was fairly successful, and her condition continued to improve between February and July of 2019. She continued to report reduced strength and left-sided weakness, but she did not have additional therapy sessions and was considered stable by July 22, 2019. By May 20, 2020, her neurologist, Dr. Mitchell, considered Mrs. Gruba recovered with some mild residual symptoms.

I find the comparable damages determinations offered by Petitioner to be helpful, but many awarded damages higher than what is warranted here. In such cases, where pain and suffering awards ranged from $170,000.00 to $180,000.00, the injured parties experienced worse prognoses subsequent to the initial hospitalizations, and continued to require medication for pain specifically related to the GBS. *See Johnson*, 2018 WL 5024012, at *7-8; *Dillenbeck*, 2019 WL 4072069, at *14; *Fedewa* 2020 WL 1915138, at *6. I recognize that Mrs. Gruba has some long-lasting sequelae from her GBS, but they do not appear to be as severe as those cases cited by Petitioner. In fact, Mrs. Gruba's neurologist specifically stated that he believed that Mrs. Gruba had made a good recovery from her GBS, albeit with some mild residual numbness. Ex. 32 at 6.

For these reasons, I do not find that the GBS injury and its sequelae were of such high severity to justify an award of the magnitude requested by Petitioner. The actual pain and suffering component will nonetheless be larger than in many vaccine injury cases, simply for the reason (as I stated at hearing) that the severe and frightening quality of an immune-mediated injury like GBS warrants commensurate damages. But the fact that *this* case of GBS was a bit less severe than comparable instances means that the actual component should be slightly lower. I therefore award actual pain and suffering of $165,000.00.

Several factors nevertheless do justify awarding a future pain and suffering component in this case. First, and as noted above, Mrs. Gruba has established that she will continue to suffer from some lingering sequelae. Second, I take note of the real-life impact Petitioner's injury imposed upon her employment. Petitioner had to leave her job at a childcare facility because she could no longer receive vaccinations, and/or was unable to handle the physical aspects of working with young children.

---

[8] Petitioner argues that her GBS began to manifest two weeks after her vaccination and contributed to a fall that resulted in breaking her arm. Pet. Br. at 5. However, onset before the second half of 2018 is not supported by the medical records. While this matter was conceded (and hence determining onset is not required for purposes of calculating damages), I do find that the later onset is one small factor weighing against a higher pain and suffering award, since it cuts against the overall force and duration of Petitioner's vaccine injury.

The impact of GBS on a petitioner's employment has in prior cases been deemed grounds for a future pain and suffering award. For example, in *Dillenbeck* (a case I decided), the petitioner was prevented from doing a job she had held for a long period of time prior to her GBS – and she could not easily obtain comparable substitute employment. *Dillenbeck,* 2019 WL 4072069, at *14-15. Here too, Petitioner's employment was disrupted by her injury (underscored by the fact that she is also receiving a lost wages component). Therefore, a modest award of $500/year would be in line with what was given in *Dillenbeck*.

In keeping with Vaccine Program practice, I must next reduce Petitioner's award to its net present value. *See* Section 15(f)(4)(A) (requiring that future compensation awards be reduced to their net present value). The Supreme Court *in Jones & Laughlin Steel Corp.* noted that the "net discount method" should ordinarily be used in choosing a proper discount rate. *Childers v. Sec'y of Health & Human Servs.*, No. 96-194V, 1999 WL 218893, at *19 (Fed. Cl. Spec. Mstr. Mar. 26, 1999) (citing Jones, 462 U.S. 523, 538-50 (1983)). That same net discount method has been commonly utilized in other special master's decisions. *See*, *e.g.*, *Brown v. Sec'y of Health & Human Servs.*, No. 00-0182V, 2005 WL 2659073, at *9-10 (Fed. Cl. Sept. 21, 2005). Net discount rates utilized by other special masters have ranged from one percent to three percent, a somewhat higher range band than that utilized by non-Program cases. *See*, *e.g.*, *Neiman v. Sec'y of Health & Human Servs.*, No. 15-631V, 2016 WL 7741742, at *1 (Fed. Cl. Spec. Mstr. Oct. 31, 2016) (utilizing a net discount rate of one percent for the first fifteen years of an award); *J.T. v. Sec'y of Health & Human Servs.*, No. 12-618V, 2015 WL 5954352, at *13 (Fed. Cl. Spec. Mstr. Sept. 17, 2015) (adopting the respondent's suggested net discount rate of 1.5 to 1.6 percent); *Childers*, 1999 WL 218893, at *25 (employing a two percent net discount rate).

Here, the parties agreed to a 1.5% discount rate and a life expectancy of 15.2 years. See Informal Remark, dated on April 6, 2021, reflecting email communication with counsel (a copy of which is appended hereto as Court Exhibit A). Applying this net discount rate, the parties have calculated that Petitioner's award for future pain and suffering should be $6,365.77. *See* Court Exhibit A. I adopt that discount rate herein as reasonable, and will award the aforementioned sum for the future component of pain and suffering.

### B. Past Lost Wages

The parties agree that Petitioner shall receive an award of $3,554.51 for lost wages. Pet. Br. at 2 n.1; Res. Br. at 1, 8.

### C. Past Unreimbursed Expenses

The parties agree that Petitioner shall receive an award of $248.85 for past unreimbursable expenses. Res. Br. at 1.

## V.   CONCLUSION

In light of all of the above, I award **Petitioner a lump sum payment of $175,169.13**, **(representing compensation in the amount of $165,000.00 for actual pain and suffering, $6,365.77 for future pain and suffering, $3,554.51 for lost wages, and $248.85 for past unreimbursed medical expenses) in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a) of the Vaccine Act. *Id*.

The Clerk of the Court is directed to enter judgment in accordance with this decision.[9]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[9] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.

# Andrew Sterling

**From:** Mangan, Terrence (CIV) <Terrence.Mangan@usdoj.gov>
**Sent:** Thursday, April 8, 2021 5:13 PM
**To:** Renee Gentry; Andrew Sterling
**Subject:** RE: Gruba, Case No. 19-1157
**Attachments:** NVSR Life Table for Females Vol. 69 No. 12 Nov. 17 2020.pdf

**CAUTION - EXTERNAL:**

Hi Andrew,

I'm happy to report that respondent and petitioner agreed upon a net present value for Ms. Gruba's future pain and suffering award.

The parties agree to a discounted present value of **$6,365.77**. The parties used a 1.5% discount rate, and a life expectancy of 15.2 years, based on the National Vital Statistics Report, Vol. 69, No. 12, November 17, 2020 (attached).

If you need anything else from either party, please let us know. Otherwise, enjoy the rest of your week!

Best,
TK

Terrence K. Mangan, Jr.
Trial Attorney
United States Department of Justice
Torts Branch, Civil Division
(202) 514-8988 | Terrence.Mangan@usdoj.gov

*This message is private or privileged. If you are not the person for whom this message is intended, please delete it and notify the sender immediately, and please do not copy or send this message to anyone else.*

**From:** Mangan, Terrence (CIV)
**Sent:** Wednesday, April 7, 2021 4:38 PM
**To:** Renee Gentry <renee@gentryesq.com>; Andrew Sterling <Andrew_Sterling@cfc.uscourts.gov>
**Subject:** RE: Gruba, Case No. 19-1157

Hi Everyone,

Apologies for the delay, but I'm waiting for a supervisor's input on this matter. I haven't handled a futures P&S case before, so it's taking me a bit longer to get respondent's position. I will hopefully have everything squared away in the next few days.

Best,
TK

Terrence K. Mangan, Jr.
Trial Attorney
United States Department of Justice

Torts Branch, Civil Division

(202) 514-8988 |Terrence.Mangan@usdoj.gov

*This message is private or privileged. If you are not the person for whom this message is intended, please delete it and notify the sender immediately, and please do not copy or send this message to anyone else.*

---

**From:** Renee Gentry <renee@gentryesq.com>
**Sent:** Wednesday, April 7, 2021 1:15 PM
**To:** Andrew Sterling <Andrew_Sterling@cfc.uscourts.gov>; Mangan, Terrence (CIV) <Terrence.Mangan@usdoj.gov>
**Subject:** Re: Gruba, Case No. 19-1157

Thanks Andrew,

I've sent my proposal to Mr. Mangan and am awaiting his response.

_____

Renée J. Gentry, Esq.
**The Law Office of Renée J. Gentry**
2020 Pennsylvania Avenue, NW
#164
Washington DC 20006
Email: renee@gentryesq.com
Office: 202-505-6435
Fax: 202-217-3250

This message is personal and confidential. If you have received it and it is not intended for you, please delete the message immediately and via reply e-mail inform the sender of your unintended receipt of the message. No attorney-client relationship can be established with The Law Office of Renée J. Gentry, Esq. absent a signed retainer agreement signed by an authorized attorney of The Law Office of Renée J. Gentry, Esq.

---

**From:** Andrew Sterling <Andrew_Sterling@cfc.uscourts.gov>
**Sent:** Tuesday, April 6, 2021 3:31 PM
**To:** Mangan, Terrence (CIV) <Terrence.Mangan@usdoj.gov>; Renee Gentry <renee@gentryesq.com>
**Subject:** Gruba, Case No. 19-1157

Ms. Gentry and Mr. Mangan,

Chief Special Master Corcoran is in the process of finalizing the damages decision in Gruba, Case No. 19-1157. During the hearing, he indicated that he was awarding $500/year for future pain and suffering. However, neither party proposed a net discount rate. Chief Special Master Corcoran asked that I reach out to you both to determine if a net present value calculation could be agreed on. If the parties can agree, please provide, by way of either an email or a joint status report, a net present value calculation by April 14, 2021. If the parties cannot agree, we will determine a discount rate based on existing decisions.

Thank you,
Andrew Sterling
Staff Attorney
Office of  Special Masters
United States Court of Federal Claims
(202) 357-6389

**CAUTION - EXTERNAL EMAIL:** This email originated outside the Judiciary. Exercise caution when opening attachments or clicking on links.